Oleson vs. The Green Bay & Lake Pepin Railway Company and others.

OLESON VS. GREEN BAY & LAKE PEPIN RAILWAY COMPANY and others.

| 36 | 383 |
| 115 | '473 |

REPEAL OF STATUTES: RAILROAD AID. (1) *Repeal by implication.* (2, 3) *Construction and effect of ch.* 182, *Laws of* 1872, *as to railroad aid.*
CONSTITUTIONAL LAW: RAILROAD AID. (4) *Statutes authorizing towns to aid railroads, valid.*

1. A statute which revises the whole subject-matter of a former statute, works a repeal thereof, without any express words of repeal.
2. Ch. 182, Laws of 1872 (relating to the grant of railroad aid by towns, etc.), provides (section 11) that "if any county, town, city or village shall issue and deliver to any railroad company any bonds in pursuance of the provisions of this act, it shall not thereafter issue or deliver any bonds or incur any liability in aid of the construction of the railroad of such company, *by virtue of the authority of any other law of this state.*" *Held*, that the words "other law of this state" must be understood of other laws existing at the time of the passage of said ch. 182, as it was not within the power of one legislature to bind future legislatures by such a provision, and the subsequent passage of an act in conflict with it would operate as a repeal of said chapter *pro tanto.*

3. In view of the foregoing provision of the act of 1872, and the absence of any express words of repeal therein, or other words showing it to be intended as a revision, abrogating all former laws relative to the voting of railroad aid by towns, etc.: *Held*, that said act did not repeal ch. 93, P. & L. Laws of 1867.

4. The constitutionality of acts like that of 1867, permitting counties, towns, etc., to subscribe for the capital stock of railroad companies, and to issue their bonds and levy taxes to pay for such stock, is no longer an open question in this court.

APPEAL from the Circuit Court for *Trempealeau* County.

The town of Arcadia, in the county of Trempealeau, having voted aid to the amount of $50,000 to the defendant railway company, and the bonds of the town for that sum having been placed in the hands of the defendant *Worthington*, who was selected by the town and the railway company to hold the same in escrow until the company should perform certain agreed conditions, this action was brought to restrain the delivery and negotiation of such bonds, and to have them declared void and delivered up to the town for cancellation. The plaintiff is a voter and tax payer of that town, and attempted to bring the action as well in behalf of all other tax payers of Arcadia as on his own behalf. The question was made in the argument, whether he had succeeded in such attempt; but the court has not found it necessary to determine it.

In August, 1872, the defendant railway company submitted a proposition to the town of Arcadia to issue to that town certificates for five hundred shares of its capital stock, of the par value of $50,000, in exchange for a like amount of the bonds of such town. The total valuation of taxable property in such town in the year 1871, as appears by the assessment roll of that year, was a trifle over $240,000. It is stated in such proposition, that it was made under ch. 93, P. & L. Laws of 1867; and, in form, it is in strict accordance with the requirements of that chapter. An election was thereupon called and held, and a vote of the electors of the town taken on the ques-

tion of accepting or rejecting such proposition, which resulted in an acceptance of it by a vote of 143 to 80.

It is conceded that these proceedings were all in strict accordance with the act of 1867, and that when the bonds were deposited with the defendant *Worthington*, the railway company also deposited with him, for the town, the certificates for its capital stock mentioned in the proposition, to a like amount, to be delivered to the town when the bonds should be earned by, and delivered to, the railway company. After this action was commenced, the company completed the performance of the conditions specified in the proposition, and, by the terms thereof, became entitled to the bonds.

The circuit court held that the bonds were lawfully issued, and rendered judgment dismissing the complaint, with costs; and the plaintiff appealed from that judgment.

*G. Y. Freeman*, for appellant, made the following, among other points: 1. The statute under which the defendants claim to have acted (ch. 93, P. & L. Laws of 1867), is a general law (13 Wis., 432; 9 id., 279; 11 id., 470; 14 id., 378; 3 id., 513), and as such is repealed by implication by a subsequent general law whose provisions are inconsistent with its own. 1 Ashm., 179; 11 Wend., 329; 10 id., 547; *Howe v. Starkweather*, 17 Mass., 240. 2. Ch. 182, Laws of 1872, is such a statute, and repeals the former by implication. During previous sessions of the legislature, an immense number of bills had been passed authorizing, in many cases, the unlimited bonding of towns in aid of railroad enterprises; and the object of the legislature in passing this act was, undoubtedly, both to establish a uniform rule upon the subject throughout the state, and, more especially, to limit the amount of indebtedness to be contracted by any town, so as to guard against the ruinous and hasty action of reckless majorities. The intent of the legislature should govern the construction of the statute; and the presumption is, where the design is not apparent, that they intended the most reasonable and beneficial construc-

tion.  9 Wheat., 381; 3 Cow., 89; 1 Pet., 64; 2 id., 662; 1
Mo., 147; 3 id., 496; 15 Johns., 358; 3 Mass., 523; 4 id., 534,
537; 7 id., 523; 10 id., 235; 12 id., 383–5; 1 Pick., 248; 20 id.,
267.   3. If the statute of 1872 does not repeal the former *in
toto*, it must do so so far as they are repugnant, and as to such
points the later statute must govern.   3 Mass., 17, 21; 1
Pick., 248, 254; id., 296; 8 id., 418; 10 id., 235; 2 Bailey,
41.   It is conceded that the defendants have not complied with
the provisions of the latter act.   4. The statute of 1867 is un-
constitutional, in that the power of bonding is unlimited.   The
state itself is limited by constitutional provision in the amount
of indebtedness to be incurred by it; and how can it, by its
legislature, confer upon a fraction of the state a right which it
does not itself possess?   Though not a municipal corporation
in the full sense of the term, a town is a *quasi* corporation, and
would seem to come within the rule laid down in *Foster v. City
of Kenosha*, 12 Wis., 616.   See *Norton v. Peck*, 3 id., 714.   The
law of 1867 is also in conflict with the constitutional provision
requiring uniformity of town government.   Const. of Wis.,
art. X, sec. 23.

*Norris & Chynoweth*, for respondents, argued that plaintiff
had shown no right to maintain the action; first, for want of
sufficient interest; and second, because he had shown no spe-.
cial injury; citing numerous authorities upon both points.   2.
The complaint states no equity for an injunction.   If it does
not show that the defense against the bonds is perfect at law,
it at least wholly fails to show otherwise.   There is no pre-
tense that the bonds were issued under the law of 1872, and
if, as claimed by the appellant, that statute repeals the act of
1867, the bonds are void even in the hands of an innocent pur-
chaser, for want of power to issue them.   *Rochester v. Alfred
Bank*, 13 Wis., 432, *Marsh v. Fulton Co.*, 10 Wall., 676; 19
Wis., 280; *Marshall Co. v. Cook*, 38 Ill., 44; *Steines v. Frank-
lin County*, 48 Mo., 167; *Clay v. Nicholas County*, 4 Bush
(Ky..), 154.   In order to make bonds, irregularly issued, valid

Oleson vs. The Green Bay & Lake Pepin Railway Company and others.

in the hands of innocent purchasers, they must import or recite a compliance with a valid, subsisting law authorizing their issue, or be executed by public agents who are themselves vested with jurisdiction to decide upon the proper performance of the conditions precedent. *Comm'rs of Knox Co. v. Aspinwall*, 21 How. (U. S.), 545; *Grand Chute v. Winegar*, 15 Wall., 355; *Mercer County v. Hacket*, 1 id., 83; *St. Joseph Township v. Rogers*, 16 id., 644. The complaint does not show the existence of either of these facts; and as the court cannot say that the bonds are not wholly void at law, equity will not interfere. 14 Wis., 618; 28 id., 593. 3. The act of 1867 is not repealed by that of 1872. It is not a *general* law, except in a limited sense, and upon the subject matter embraced in it must control or supersede all general legislation. Potter's Dwarris on Stats., 272–3; 17 Wis., 532; *Johnston v. Humburger*, 13 id., 176; *Mead v. Bagnall*, 15 id., 156; 17 id., 253; 19 id., 55. Repeal by implication is not favored, but the doctrine is applied only when reconciliation is impossible. *Att'y General v. Brown*, 1 Wis., 513. Not only does the law of 1872 fail to repeal the former act by express words, but it expressly recognizes its existence, differing in this respect from *Kellogg v. Oshkosh*, 14 Wis., 623; *Burlander v. R. R. Co.*, 26 id., 76; and *Howe v. Starkweather*, 17 Mass., 240. Where the language of a statute is plain, it is unnecessary to look outside of it to determine the intent of the legislature. *State v. Cram*, 16 Wis., 343. The effect of the law of 1872 was simply to provide a new mode of procedure in bonding of towns, and to exclude those who adopted its provisions from the benefits of any former acts. This did not annul the former act. *Goodrich v. Milwaukee*, 24 Wis., 422; *Meek v. Pierce*, 19 id., 300. 4. Conceding that the act of 1867 is in any way affected by that of 1872, the bonds are yet valid; for both they and all proceedings precedent to their issue have been ratified and confirmed by chaps. 289 and 218, Laws of 1873, both passed before the commencement of this action. As to the power of the legislature

to do this, see *Campbell v. Kenosha*, 5 Wall., 194; *Fish v. Kenosha*, 26 Wis., 33; *St. Joseph v. Rogers*, 16 Wall., 644; *Steines v. Franklin County*, 48 Mo., 167; Dillon on Corp., 412, note.

LYON, J. The learned counsel for the plaintiff concedes (what is doubtless the fact), that all of the proceedings relating in any manner to the bonds in controversy were strictly in accordance with the requirements of ch. 93, P. & L. Laws of 1867, entitled " an act to authorize the counties and towns through which the Green Bay & Lake Pepin Railway passes, to aid in its construction," as amended by ch. 166, P. & L. Laws of 1869, and ch. 76, P. & L. Laws of 1871.

If, therefore, the act of 1867 was a valid, subsisting law when those proceedings were taken, the bonds are lawfully in the hands of the defendant *Worthington;* the railway company is entitled to a delivery of them; and the judgment of the circuit court dismissing the complaint is manifestly correct.

But the counsel argues with great ingenuity, that the act of 1867 was repealed by the enactment of ch. 182, Laws of 1872, and hence was not in force when the town of Arcadia voted aid to the defendant railway company. The act of 1872 contains no repealing clause whatever, and, of course, does not *expressly* repeal any statute. If it abrogates the act of 1867, it does so by implication alone.

It is said that the act of 1872 is an entire revision and codification of the law on the subject of town and municipal aid to railway companies, and supersedes and repeals all former laws on the same subject. If it be a revision of former laws, its effect doubtless is to repeal them. The rule is elementary, and has frequently been applied by this court, that a statute which revises the subject matter of a former statute works a repeal of such former statute without express words to that effect. *Lewis v. Stout*, 22 Wis., 227; *Burlander v. R'y Co.*, 26 id., 77; *Gilbank v. Stephenson*, 30 id., 157; *Moore v. R'y Co.*, 34 id., 173. Hence, we must determine whether the act of 1872 is a revis-

Oleson vs. The Green Bay & Lake Pepin Railway Company and others.

ion of the whole subject matter of granting municipal and town aid to railway companies; and this question must be determined mainly from the language of the act itself.

As already observed, the law of 1872 does not, in express terms, repeal any former enactment. Moreover, we have examined it carefully, and we fail to find in it a single phrase which can reasonably be said to show that the legislature intended it as a revision which should abrogate all former statutes on the same subject. Counsel has failed to point out to us one such clause or expression therein. Such being the case, the rules of statutory construction which have been invoked to support the position that the act of 1872, by necessary implication, repeals that of 1867, have but little significance.

But in sec. 11 of the law of 1872, we find an express recognition of the continued existence of special aid laws previously enacted. That section is as follows: "If any county, town, city or village shall issue and deliver to any railroad company any bonds in pursuance of the provisions of this act, it shall not thereafter issue or deliver any bonds or incur any liability in aid of the construction of the railroad of such company, *by virtue of the authority of any other law of this state.*" It is very clear that the last sentence of this section relates only to laws which were in existence when the act of 1872 was passed, for it could not operate upon laws thereafter enacted. Future acts in conflict with it would necessarily operate as a repeal of the section *pro tanto*. The legislature of 1872 could not bind future legislatures by the provisions of sec. 11 ; and it is fair to presume that it made no attempt to do so.

Had the legislature intended that the law of 1872 should abrogate all former laws permitting towns, etc., to extend aid to railway companies, it would have been easy to express that intention; much easier than it was to avoid the expression of it. When the same legislature revised the laws concerning the exercise of the right of eminent domain for the benefit of railway companies, and made all existing companies subject to the re-

vised law, without regard to the special provisions of their charters, it employed language which plainly expressed such intention. Laws of 1872, ch. 119, secs. 13 and 55; *Moore v. R'y Co.*, *supra*. But the use of any language in ch. 182 from which it could reasonably be inferred that the chapter was intended as a revision of the law on the subject of town and municipal aid to railways, was scrupulously avoided, and, as we have seen, language is used therein which proves the opposite intent.

These considerations are controlling, and it must be held that the act of 1867 is not repealed by the act of 1872.

It is claimed that the act of 1867 is void, and several constitutional objections are urged against its validity. These objections come too late. The validity of similar laws has been repeatedly asserted by this court; and such laws, and bonds issued under them, have for their sure foundation the maxim, *stare decisis.* It may be that this is their *only* foundation, but it is a sufficient one. See *Phillips v. The Town of Albany*, 28 Wis., 357.

Some other questions were argued; but it is unnecessary to consider them.

*By the Court.* — The judgment of the circuit court is affirmed.